**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAVERHILL COKE COMPANY LLC,<br><br>Plaintiff,<br><br>v.<br><br>ALGOMA STEEL GROUP INC.,<br><br>Defendant. | Case No. 1:26-cv-6182 |

**COMPLAINT FOR BREACH OF CONTRACT**
**AND DECLARATORY JUDGMENT**

Plaintiff Haverhill Coke Company LLC ("Haverhill," or "Plaintiff"), by and through its undersigned counsel, hereby makes this Complaint against Defendant Algoma Steel Group Inc. ("Algoma Group," or "Defendant"):

**NATURE OF THE ACTION**

1. This is an action for breach of contract and declaratory judgment arising from Algoma Group's failure to honor its unconditional guaranty of payment obligations owed to Haverhill by Algoma Steel Inc. ("Subsidiary Algoma"), Defendant's subsidiary.

2. Subsidiary Algoma and Haverhill entered into a Coke Shipment Sale and Purchase Agreement, dated December 31, 2021 (the "Underlying Agreement" or "Guaranteed Agreement"), under which Subsidiary Algoma agreed to purchase and take delivery on certain volumes of coke on a take-or-pay basis. (*See* Exhibit A, Underlying Agreement, ¶ 3.1.)

3. As a condition of entering into the Underlying Agreement, Haverhill required that Defendant Algoma Group guarantee the obligations of Subsidiary Algoma in the event that Subsidiary Algoma did not pay.

4. Accordingly, on December 31, 2021, Algoma Group entered into the "Buyer Guaranty," in which Algoma Group unconditionally and irrevocably guaranteed prompt payment, when due, of all amounts owed by Subsidiary Algoma to Haverhill. (*See id.*, Schedule 3, ¶ 1.)

5. In that Buyer Guaranty, Algoma Group expressly disclaimed any requirement that Haverhill first sue Subsidiary Algoma or, indeed, take any other action other than sending a demand to Algoma Group giving ten business days' notice.

6. For more than nine months, Subsidiary Algoma has failed to pay amounts due to Haverhill under the Underlying Agreement. (*See* Exhibit B, Demand Letter, at 1.)

7. Haverhill has served a demand for payment in writing pursuant to the Buyer Guaranty. (*See id.*)

8. On the date agreed for Algoma Group's response, Algoma Group refused to satisfy its obligations under the Buyer Guaranty. (Exhibit C, Response Letter.)

9. To date, Subsidiary Algoma and Algoma Group together have paid zero dollars towards the $34,024,986.87 presently due and owing under the Underlying Agreement. (*See* Ex. B, at 2.)

10. Plaintiff Haverhill now seeks: (1) an award of damages for Algoma Group's breach of the Buyer Guaranty contract; (2) a declaratory judgment that Algoma Group is obligated to pay Haverhill the full amount that Subsidiary Algoma owes Haverhill pursuant to the Underlying Agreement; (3) interest on the amount due; (4) attorneys' fees and other costs of enforcing this Guaranty as provided in the Buyer Guaranty; and (5) such other and further relief as the Court deems just and proper.

**PARTIES**

11. Plaintiff Haverhill is a Delaware limited liability company and producer of coke, a solid fuel made by heating coal in the absence of air. Haverhill's principal place of business is Ohio. Haverhill is wholly owned by Sun Coal & Coke LLC, a limited liability company organized under the laws of Delaware, with its principal place of business in Illinois. Sun Coal & Coke LLC is a wholly-owned subsidiary of SunCoke Energy Inc. ("SunCoke"), which is incorporated in Delaware and has its principal place of business at 1011 Warrenville Road, Suite 600, Lisle, Illinois 60532.

12. All of Haverhill's member companies are domestic entities.

13. Defendant Algoma Group is a Canadian corporation organized and existing under the laws of the Province of British Columbia. (*See* Ex. A, ¶ 4.)

14. Defendant Algoma Group is the parent company of Subsidiary Algoma, a steel manufacturer incorporated in British Columbia, Canada.

15. Algoma Group's principal place of business is at 105 West Street, Sault Ste. Marie, Ontario, Canada P6A 7B4.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction and thus has the power to order the requested relief.

17. This Court has diversity jurisdiction because Haverhill is a Delaware limited liability company with its headquarters in Illinois and all its member companies are domestic, while Algoma Group is a Canadian corporation with its principal place of business in Ontario, Canada, and the amount in dispute exceeds $75,000. 28 U.S.C. § 1332.

18. This Court has personal jurisdiction over Algoma Group pursuant to the Buyer Guaranty because Article 12 of the Buyer Guaranty designates the state and federal courts of the State of New York as the exclusive forum for the parties to resolve their disputes, and Algoma Group expressly waived any objection to personal jurisdiction in this Court.

19. Similarly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(c) because all parties agreed that the state and federal courts of New York in the Borough of Manhattan were a proper venue for this dispute and waived any objection to venue in this Court. (Ex. A, Schedule 3, ¶ 12.)

## FACTUAL ALLEGATIONS

### I. The Underlying Agreement

20. Haverhill and Subsidiary Algoma entered into the Underlying Agreement on December 31, 2021. The Underlying Agreement provided for Subsidiary Algoma's receipt and purchase of coke—"screened blast furnace metallurgical coke" (the "Product"), specifically—from Haverhill. (Ex. A, ¶ 1.2.)

21. The Underlying Agreement governs the parties' commercial relationship for Product sales between 2022 and 2026, totaling a minimum volume of 760,000 net tons of Product to be bought over a five-year term. (*Id.*, ¶ 3.1.)

22. In 2024 and 2025, the parties to the Underlying Agreement agreed by letter to increase Product volumes through the end of the contracted term.

23. However, last fall, Subsidiary Algoma stopped performing under the Underlying Agreement and refused to accept further shipments of Product from Haverhill. Citing the United States' imposition of tariffs on Canadian steel imports, Subsidiary Algoma argued that its performance became commercially impracticable and frustrated at law.

24. Haverhill initiated an arbitration before the American Arbitration Association ("AAA") to enforce its contractual rights and avoid suffering significant financial harm as a result of Subsidiary Algoma's unjustified claim that the Underlying Agreement has been terminated.

25. In its arbitration, Haverhill seeks a declaration that the Underlying Agreement remains binding and enforceable, as do the parties' rights and obligations under the Underlying Agreement, as well as an order of specific performance compelling Subsidiary Algoma to perform its obligations under the Underlying Agreement. In the alternative, Haverhill's arbitration demand requests an award finding that Subsidiary Algoma has materially breached and repudiated the Underlying Agreement and awarding Haverhill damages as a result. Finally, Haverhill's arbitration demand also seeks an award of the amount Subsidiary Algoma owes Haverhill pursuant to unpaid invoices.

26. In granting Haverhill's motion to attach assets in aid of the arbitration award, this Court concluded both that Haverhill is likely to prevail in that arbitral action *and* that there is "imminent risk" that Subsidiary Algoma would have "remove[d] or dissipate[d] assets" and thus "rendered ineffectual" any arbitral award granted to Haverhill. (Ex. D, Order Granting *Ex Parte* Attachment (Jun. 1, 2026); *see also* Dkt. 27, Order (Jun. 18, 2026) (granting *ex parte* attachment and confirmed the June 1, 2026 order).)

27. The Court granted the full amount of assets that Haverhill sought to attach, which was $25,700,865.60. (Ex. D.)

## II. The Buyer Guaranty

28. Algoma Group promised that it "irrevocably and unconditionally guarantees to Beneficiary, as primary obligor and not merely as surety, the prompt payment of the payment

obligations of Obligor under the [Underlying Agreement] when due and payable thereunder." (Ex. A, Schedule 3, ¶ 1.)

29. Algoma Group expressly agreed that the Buyer Guaranty "shall constitute a continuing, absolute and unconditional guarantee of payment and not of collection" in the event Subsidiary Algoma is unable to fulfill its obligations to Haverhill. (*Id.,* ¶¶ 1, 3.02.)

30. The Buyer Guaranty also provides that Haverhill may proceed directly against Algoma Group if Subsidiary Algoma fails to perform its obligations under the Underlying Agreement. (*See id.*, ¶ 1.) Haverhill need not "exercise[ ] any right, assert[ ] any claim, notice or demand or enforce[ ] any remedy whatsoever against [Subsidiary Algoma] or any other person or entity, either before or as a condition to the performance of [Algoma Group's] obligations." (*Id.*)

31. Algoma Group waived notice of acceptance of the Buyer Guaranty, "other than [Haverhill's] signature on [the Buyer] Guaranty, and presentment and demand concerning the liabilities of Guarantor [Algoma Group]." (*Id.*, ¶ 3.01.)

32. Algoma Group also agreed that the Underlying Agreement's Buyer Guaranty "constitutes an instrument for the payment of money" that, in the event of a dispute, could be the subject of an expedited action. (*Id.*, ¶ 13.)

## III. Algoma Group's Failure to Honor the Buyer Guaranty

33. As explained above, due to its refusal to perform under the Underlying Agreement, Subsidiary Algoma has incurred payment obligations to Haverhill in the amount of at least $34,024,986.87, as of June 17, 2026. (*See* Ex. B, at 2.)

34. As of the date of this complaint, Subsidiary Algoma has failed to pay this amount, or any part thereof, and it remains due and owing.

35. On June 17, 2026, Haverhill made a written demand upon Algoma Group, pursuant to the terms of the Buyer Guaranty, for payment of the outstanding amount of $34,024,986.87. (*Id.*)

36. This amount includes "the difference between Algoma's Base Price and the resale price for any rejected Product, as well as related costs and interest," as Article 3.4 of the Underlying Agreement provides. (*Id.*) Additional amounts will likely be due as Haverhill continues to attempt to mitigate its damages.

37. Per the Buyer Guaranty, Algoma Group had 10 business days to pay the outstanding amount. (Ex. A, Schedule 3, ¶ 1.) The parties agreed that Algoma Group could respond to the demand by July 16, 2026.

38. On July 16, 2026, Algoma Group refused to pay any part of the amount demanded, stating that "there are no payments due and owing for Product" and Algoma Group's "obligations under the [Buyer] Guaranty have not been triggered" because Subsidiary Algoma's contractual duties under the Underlying Agreement were "discharged" upon its assertion that the contract had been frustrated. (Ex. C.)

39. However, to date, there has been no judicial or arbitral determination that Subsidiary Algoma's obligations were discharged. To the contrary, a federal judge sitting in this District has held that Haverhill is likely to establish that the obligations are not discharged and has ordered Subsidiary Algoma's assets attached as a result. (Ex. D; Dkt. 27, Order (Jun. 18, 2026).)

40. In the Buyer Guaranty, Algoma Group provided Haverhill with a "continuing, absolute and unconditional guarantee of payment and not of collection," with no requirement that

Haverhill pursue any remedy against Subsidiary Algoma or any other party. (Ex. A, Schedule 3, ¶ 1.)

41. Accordingly, Algoma Group's separate obligation to pay the $34,024,986.87 is currently due and owing.

42. As a direct and proximate result of Algoma Group's failure to pay under the Buyer Guaranty, Haverhill has been damaged in an amount to be proven at trial, but not less than $34,024,986.87, plus pre- and post-judgment interest, costs, and attorneys' fees. (*See* Ex. A, Schedule 3, ¶ 16 (specifying the costs of enforcement to fall upon Algoma Group, including "all reasonable costs, expenses, and fees, including all reasonable attorney's fees, actually incurred by [Haverhill] in enforcing this Guaranty, to the extent that [Haverhill] is the prevailing party").)

**FIRST CAUSE OF ACTION: BREACH OF CONTRACT**

43. Haverhill realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

44. The Buyer Guaranty is a valid and enforceable contract between Haverhill and Algoma Group, supported by adequate consideration.

45. Haverhill has performed all of its obligations under the Underlying Agreement and the Buyer Guaranty, or such performance has been waived or excused.

46. Under the terms of the Buyer Guaranty, Algoma Group was and is unconditionally obligated to pay Haverhill all amounts owed by Subsidiary Algoma pursuant to the Underlying Agreement upon Subsidiary Algoma's failure to pay when due.

47. Subsidiary Algoma has failed to pay amounts due under the Underlying Agreement, triggering Algoma Group's payment obligation under the Buyer Guaranty.

48. Algoma Group breached the Buyer Guaranty when it failed and refused to pay Haverhill the amounts owed following Haverhill's demand.

49. As a direct and proximate result of Algoma Group's breach, Haverhill has suffered damages in an amount to be proven at trial, but not less than $34,024,986.87, plus interest, costs, and attorneys' fees as provided for in the Buyer Guaranty.

**SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT**

50. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

51. An actual and justiciable controversy exists between Haverhill and Algoma Group concerning the nature and scope of Algoma Group's obligations under the Buyer Guaranty, in particular whether Algoma Group is presently obligated to pay Haverhill $34,024,986.87, plus interest, costs, and attorneys' fees as provided for in the Buyer Guaranty.

52. Plaintiff is entitled to a judicial declaration resolving this controversy, pursuant to 28 U.S.C. § 2201.

53. A declaration of the parties' rights and obligations will terminate the controversy and remove any uncertainty giving rise to this proceeding.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Haverhill Coke Company LLC respectfully requests that this Court enter judgment in its favor and against Defendant Algoma Steel Group Inc. as follows:

(i) On the First Cause of Action, awarding Plaintiff compensatory damages in an amount to be determined at trial, but not less than $34,024,986.87, plus interest at the maximum rate permitted by law or as specified in the Buyer Guaranty, costs, and Haverhill's attorneys' fees in enforcing the Buyer Guaranty;

(ii) On the Second Cause of Action, entering a declaratory judgment that Algoma Group is presently obligated to pay Haverhill $34,024,986.87, plus interest, costs, and attorneys' fees as provided for in the Buyer Guaranty;

(iii) Awarding interest calculated at 9% simple interest, as provided for in New York CPLR § 5004;

(iv) Awarding Plaintiff its reasonable attorneys' fees and costs of suit incurred herein, as permitted under the Buyer Guaranty and applicable law; and

(v) Awarding such other and further relief as the Court deems just and proper.

Dated: July 21, 2026
New York, NY

Respectfully submitted,

*/s/ Elizabeth A. Edmondson*
Elizabeth A. Edmondson
Jenner & Block LLP
1155 Avenue of the Americas
New York, NY 10036-2711
EEdmondson@jenner.com
(212) 891-1600

Catherine L. Steege (*pro hac vice forthcoming*)
Jenner & Block LLP
353 N. Clark St.
Chicago, IL 60654
CSteege@jenner.com
(312) 222-9350

Kenneth D. Beale (*pro hac vice forthcoming*)
Emma J. O'Connor (*pro hac vice forthcoming*)
Jenner & Block LLP
1099 New York Ave NW #900
Washington, DC 20001
KBeale@jenner.com
EOConnor@jenner.com
(202) 639-6000

*Counsel for Plaintiff Haverhill Coke Company LLC*